Case 5:23-cv-00149   Document 29   Filed on 11/14/24 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
November 14, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| G.B.G. RANCH, LTD., *et al.*, | § |
| | § |
| Appellants, | § |
| | § |
| VS. | § CIVIL ACTION NO. 5:23-CV-00149 |
| | § |
| NORMA BENAVIDES HUNT, | § |
| | § |
| Appellee. | § |

### ORDER AFFIRMING BANKRUPTCY COURT'S FINAL JUDGMENT AND ORDER DENYING MOTION FOR AUTHORITY TO DISCLOSE SETTLEMENT OFFER AND REVERSING AND REMANDING ATTORNEYS' FEES ORDER AS TO AMOUNT AWARDED

**I.     Introduction**

Now before the Court are Manuel A. Benavides and GBG Ranch, Ltd.'s (collectively, Appellants) consolidated appeal of the Bankruptcy Court's Final Judgment, "Order on Motion for the Award of Attorneys' Fees," and "Order Denying Motion for Authority to Disclose Settlement Offer," all entered on December 5, 2023.  The underlying Chapter 11 bankruptcy case of Appellant GBG Ranch, Ltd. (Debtor), along with Appellee Norma Benavides Hunt's (Mrs. Hunt) adversary seeking relief from the confirmation order, have a long and complicated history—together, they span more than nine years and three bankruptcy judges.  But distilled to its most basic, this appeal concerns a family dispute between Appellant Manuel (Guero) Benavides and his sister, Appellee Mrs. Hunt, over the siblings' interests in the Oilton ranch, one of the Benavides family's three ranches originally owned and managed by the Debtor entity.  In a memorandum opinion issued in December 2022, the Bankruptcy Court found that Guero and Debtor's counsel had committed fraud on the court and resolved to fulfill the intent of the confirmed plan by voiding the transfer of certain interests in the Oilton ranch to Guero and returning them to a residuary trust of which Mrs.

Hunt (along with her siblings) was a beneficiary, and by awarding attorney's fees to Mrs. Hunt in the amount of $2,293,009.35, to be paid by Guero individually due to his intentional failure to carry out the plan. Debtor and Guero now appeal the final judgment and attorney's fees order entered in conformance with that opinion, along with another order of the Bankruptcy Court declining to admit Appellants' alleged settlement offer on fees as evidence in determining the award. Upon consideration of the parties' briefing and the record on appeal,[1] in light of the relevant law, the Court finds no basis to disturb the final judgment or the Bankruptcy Court's decisions to award fees and to do so without admitting the settlement offer, and will affirm in these respects. But as to the amount of attorney's fees awarded, the Court finds that the order awarding fees must be reversed and remanded to allow the Bankruptcy Court to consider Appellants' unaddressed objections.

**II.    Standard of Review**

Where, as here, a district court exercises its jurisdiction to hear an appeal of a bankruptcy court's final judgment and orders, "traditional appellate standards" apply. *See* 28 U.S.C. § 158(a); *Stern v. Marshall*, 564 U.S. 462, 475 (2011). The district court reviews the bankruptcy court's conclusions of law and mixed law and fact questions de novo, findings of fact for clear error, and discretionary rulings for abuse of discretion, the latter of which occurs when the bankruptcy court bases its ruling on an erroneous review of the law or on a clearly erroneous assessment of the evidence. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000); *see In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008); *Matter of Mendoza*, 111 F.3d 1264, 1266 (5th Cir. 1997). "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 434 (5th Cir. 1994) (quoting *Matter of*

---

[1] (Dkt. Nos. 1, 6, 7, 10, 20, 24).

*Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 209 (5th Cir.1983)) (internal quotation marks omitted). Findings of fact are not clearly erroneous if "plausible in the light of the record as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). Under the clearly erroneous standard, the bankruptcy court's opportunity to make first-hand credibility determinations entitles its assessment of the evidence to deference by the district court. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

### III.  Undisputed Factual and Procedural Background[2]

The underlying bankruptcy case originated in July 2014, when Appellant Debtor, a Texas limited partnership created in 2006 to own and manage three ranches for the Benavides family, filed for Chapter 11 protection. Relevant to this appeal, interests in Debtor and related entities were held, in part, by a residuary trust created by the last will and testament of Guillermo Benavides, Sr., for the benefit of his wife, Norma Benavides (Mrs. Benavides), while she lived, and on her death, their four children: Appellant Guero, Appellee Mrs. Hunt, Guillermo (Memo) Benavides, Jr., and Ana Claudia Benavides, the latter via the "ACB 1991" trust.[3] Mrs. Benavides and her sons, Guero and Memo, served as co-trustees of the residuary trust. In November 2015, various interested parties attended a mediation with Bankruptcy Judge Marvin Isgur, then entered into a mediated settlement agreement providing the framework for the plan of liquidation, the final version of which the Bankruptcy Court confirmed that same month. In December, Guero and Memo resigned as trustees of the residuary trust and made coordinated offers to their 89-year-old mother, Mrs. Benavides, to purchase the trust's interests in two of the ranches, Oilton (to Guero) and Corazon (to Memo), with discounts made to the proposed purchase prices for alleged burdens

---

[2] The Court derives this background from the Bankruptcy Court's memorandum opinion, final judgment and orders on appeal, the parties' appellate briefs, and this Court's docket, reserving its discussion and resolution of the parties' disputes to the sections addressing the issues on appeal.

[3] The corpus of the ACB 1991 trust would go to Mrs. Hunt on Ana Claudia's passing, which occurred prior to Mrs. Benavides's death in April 2016.

created by a wind lease held by Quita Wind Energy Co., L.L.C., a company in which the residuary trust also had a partial interest and which no longer burdened the Corazon ranch. Mrs. Benavides accepted the offers on behalf of the residuary trust, after which she resigned as trustee and former Bankruptcy Judge Richard Schmidt became the successor trustee. By the end of December 2015, the Bankruptcy Court had entered a final decree and closed the bankruptcy case.

In March 2016, Appellee moved to reopen it, and in August of that year, the Bankruptcy Court converted the motion into the present adversary, which was heavily litigated over the course of several years. By August 2019, Appellee and Memo had settled their claims against one another, effectively settling the issue of the residuary trust's interests in the Corazon ranch, and the case proceeded to a trial before Bankruptcy Judge David Jones on Appellee's request for relief against Appellants Debtor and Memo, as pleaded in her most recent amended complaint: that the Bankruptcy Court vacate the confirmation order under 11 U.S.C. § 1144 and Federal Rule of Civil Procedure 60. Due to a temporary adjournment for the purpose of settlement negotiations, which proved unsuccessful, followed by the restrictions imposed by the Covid-19 pandemic, the trial did not conclude until March 2021. The Bankruptcy Court then took the case under advisement and allowed for the submission of post-trial briefs, the last of which was submitted in May 2022.

In its memorandum opinion issued in December 2022, the Bankruptcy Court determined that Guero and Debtor's attorney, as Debtor's representatives, had procured the confirmation order by fraud within the meaning of § 1114, which constituted the exclusive means to vacate that order, but that Appellee's briefing and closing argument had altered her pleaded request for relief to seek modification (rather than revocation) of the confirmation order by removing Guero and his children's trusts from all ownership interests in the third of the ranches, the Hill Ranch, based on Guero's complained-of conduct. Recognizing that 11 U.S.C. § 1127(b) addresses plan modifications, which only a plan proponent or reorganized debtor may seek, and that the Court

could not use its equitable power under 11 U.S.C. § 105 to modify the plan, the Court interpreted Appellee's altered request for relief to "implicitly request[ ] the Court to enforce the confirmed plan," which the Court found it could do. The Court interpreted the plan to give the residuary trust a 20% undivided interest in the Oilton ranch and found that efforts by Guero and Debtor's counsel, along with Memo's counsel, to defraud the residuary trust of its interest under the guise of confirming a "false" plan and purporting to act pursuant to that plan and the confirmation order constituted fraud on the court. As a consequence, the Court found it appropriate to void the transfer of the residuary trust's interests to Guero (and to his children and related affiliates/trusts) and to fulfill the plan's stated intent by giving the trust "all property interests contemplated under the [mediated settlement agreement], the plan and the confirmation order," and Appellee "whatever she is entitled to receive under applicable state law" as a beneficiary of that trust. To the extent the plan included certain third-party "releases and exculpations," the Court found that "Debtor and certain of its professionals deliberately violated Mrs. Hunt's due process rights by depriving her of adequate notice of multiple proceedings that affected her property rights," such that any release or exculpation provided to any non-debtor party did not bind her. Given Guero's testimony that he would consummate the plan, and observing that "[a]n appropriate sanction for failing to comply with a confirmed plan is the award of the affected party's attorney's fees," the Court also found it appropriate to award Appellee her reasonable attorney's fees to be paid by Guero "as the party responsible for implementing the Plan but intentionally failing to do so." The Court gave Appellee time to submit an itemized request for fees and expenses, and Guero time to object, and held an evidentiary hearing on the matter in August 2023.

In December 2023, Bankruptcy Judge Jeffrey Norman entered final judgment in accordance with the memorandum opinion and by separate order, awarded attorney's fees to Appellee in the amount of $2,293,009.35, to be paid by Guero individually, in accordance with the

Court's rulings at the evidentiary hearing on fees. Also by separate order, the Bankruptcy Court denied Debtor and Guero's "motion for authority to disclose settlement offer" on fees, reasoning that the Court had "already ruled on the attorney fee issue." Debtor and Guero separately appealed the final judgment and orders, and this Court consolidated the appeals. Appellants raise six issues on appeal, which the Court will now address.

## IV.   Issues on Appeal

### A.   First Issue: Whether Bankruptcy Court Erred in Holding that Appellee's Due Process Rights Were Violated

Appellants first challenge the Bankruptcy Court's due process holding, representing that the holding consists of a single sentence: "The Court finds that the Debtor and certain of its professionals deliberately violated Mrs. Hunt's due process rights by depriving her of adequate notice of multiple proceedings that affected her property rights." (Dkt. No. 7 at ¶ 17). Appellants complain that this finding lacks "analysis of the standards or case law" and factual specificity, and cite to case law and the record in an effort to show that Appellee had notice of the bankruptcy case and the filing and contents of the confirmed plan, and the opportunity to object to the plan at the confirmation hearing she attended, which is all that due process requires. (*Id.* at ¶¶ 18-21; Dkt. No. 24 at pp. 12-14). Viewed in context, the Bankruptcy Court's due process finding more precisely concerns Appellee's lack of notice of third-party "releases and exculpations" contained within the confirmed plan. (Dkt. No. 6, ROA 1747). As Appellee points out, U.S. Supreme Court precedent relied on by Appellants supports the use of Rule 60—relief pleaded by Appellee—to void a confirmation order to the extent it is premised on a violation of the due process rights of an affected party. *See* (Dkt. No. 20 at pp. 38-39); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).[4] In *Espinosa*, the debtor proposed a plan to discharge his student loan debt—a

---

[4] Appellants also cite to *Matter of Christopher*, 28 F.3d 512 (5th Cir. 1994), and *In re Tex. Tamale Co., Inc.*, 219 B.R. 732 (Bankr. S.D. Tex. 1998), both of which pre-date *Espinosa*, which the Court finds controlling. (Dkt. No. 7 at ¶ 19).

discharge permitted under Chapter 13 of the Bankruptcy Code, but only if failure to discharge the debt would impose an "undue hardship" on the debtor and his dependents. *Espinosa*, 559 U.S. at 263-64, 268.  The Federal Rules of Bankruptcy Procedure required the bankruptcy court to make the undue hardship determination in an adversary proceeding commenced by the debtor through service of a summons and complaint on the affected creditor, but the debtor failed to initiate the adversary and the court confirmed the plan without finding undue hardship.  *Id.* at 263-65, 268-69.  The affected creditor received notice of the plan and filed a proof of claim for the student loan's principal and interest but did not object to the plan (which proposed only payment of the principal, upon which interest would be discharged), appeal the confirmation order, or respond to the Chapter 13 trustee's post-order notice of the creditor's responsibility to advise the trustee if it objected to the principal-only amount listed for payment in the plan.  *Id.* at 265.  Years later, after the debtor had completed his payments under the plan and received a full discharge, the creditor commenced efforts to collect the unpaid interest, the debtor responded with a motion asking the bankruptcy court to enforce the discharge order, and the creditor filed a cross-motion to void the confirmation order under Rule 60(b)(4), in part on the alleged basis that the debtor's failure to serve the creditor with a summons and complaint to initiate the adversary proceeding violated the creditor's due process rights.  *Id.* at 264-66.  On review of the Ninth Circuit's decision declining to void the confirmation order, the U.S. Supreme Court acknowledged that the order was a final judgment from which the creditor did not appeal, and that ordinarily the finality of a bankruptcy court's order following the conclusion of direct review would stand in the way of challenging the enforceability of that order.  *Id.* at 269 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)).  However, the Court recognized Rule 60(b)(4) as providing a limited exception to the rule of finality where the challenged judgment is a "legal nullity," i.e., "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final."  *Id.* at 270.

*Espinosa* included "a violation of due process that deprives a party of notice or the opportunity to be heard" in the short-list of infirmities that can void a confirmation order but concluded that the complained-of error in the case before it failed to qualify as a due process infirmity warranting Rule 60(b)(4) relief. *Id.* at 270-71. Citing to well-established precedent holding that due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," the Court reasoned that the creditor "received actual notice of the filing and contents of [the] plan" depriving it of a right granted by a procedural rule and could have timely objected to and appealed that deprivation, which "more than satisfied [the creditor's] due process rights." *Id.* at 272 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Appellants submit that because Appellee had notice of the bankruptcy case in which she was represented by counsel, received a copy of the plan the day before the confirmation hearing, and actually attended the hearing,[5] the facts in this case align with *Espinosa* and merit the same result. (Dkt. No. 7 at ¶¶ 18, 20; Dkt. No. 24 at pp. 12-13). But Appellants return—consistent with the Bankruptcy Court's recitation of facts—that Appellee was served with a copy of a red-lined version of the plan in her driveway the day before the hearing, and with the confirmation order itself the very day her appellate rights expired. (Dkt. No. 20 at pp. 41-42; Dkt. No. 6, ROA 1737-38). Rather than waiting years to challenge the confirmation order, she moved to reopen the bankruptcy case within a few months. *See* (Dkt. No. 6, ROA 1738-39). Given the Bankruptcy Court's additional findings that the plan summary and Guero and Debtor's counsel's proffer to the Court in support of confirmation, representing that Guero would consummate the plan by transferring Debtor's assets in accordance with the mediated settlement agreement (thus reserving

---

[5] A dispute exists over whether Appellee attended the hearing and the Bankruptcy Court made no explicit finding in this regard. *See* (Dkt. No. 7 at ¶ 20; Dkt. No. 20 at p. 20; Dkt. No. 6, ROA 1738). Like the Bankruptcy Court, this Court has no need to resolve the dispute in light of other factors pointing to a denial of due process.

for Appellee her residuary interest in the Oilton ranch) when in fact he would not, were false when made, the Court has occasion to deviate from the outcome in *Espinosa*. *See* (*id.*, ROA 1737). The Bankruptcy Court's findings rely in part on its credibility assessments and in part on the divergence between what the plan summary and proffer promised and what actually occurred—circumstantial evidence of the falsity of the plan summary and proffer when made—which this Court has no compelling basis to disturb. Appellants' insistence, based on statements of witnesses found to have testified non-credibly or made false representations to the Bankruptcy Court, that the idea to transfer the residuary trust's interests to Guero and Memo came from 89-year-old Mrs. Benavides after confirmation and within months of her passing, is not enough. *See* (Dkt. No. 7 at ¶ 25; Dkt. No. 6, ROA 1744-45). Whatever Appellee had notice of before the confirmation order and expiration of her appellate rights, it was not Guero's self-protection from known falsehoods through releases and exculpations contained within the plan, and the Bankruptcy Court did not err in finding that Appellee could not be bound by them. Rule 60(b)(4) constituted sufficient basis for the Court to void that portion of the confirmation order containing the third-party releases and exculpations.

**B.     Second Issue: Whether Bankruptcy Court Erred in Relying on Post-Confirmation Events to Find Fraud**

Appellants next take issue with the Bankruptcy Court's application of § 1144, which authorizes revocation of a confirmation order "*procured* by fraud," arguing that the Court's finding of fraud relies exclusively on events occurring after entry of the confirmation order: Guero's (along with Memo's) scheme to purchase at an improperly discounted value the residuary trust's interests in the Oilton and Corazon ranches. (Dkt. No. 7 at ¶¶ 21(b)-26); 11 U.S.C. § 1144 (emphasis added). But again, the Bankruptcy Court determined that the plan summary and proffer in support of confirmation were false when made as they concerned the residuary trust's interests in the ranches (and therefore the interests of residuary beneficiary Appellee, identified by the plan

summary and proffer as a settling party when in fact she was not), and the Court finds no basis to second-guess the Bankruptcy Court's credibility assessments made over the course of this protracted litigation or to question its findings of a divergence between what the mediated settlement agreement and plan proposed and what Guero and Debtor's counsel soon thereafter delivered. *See* (Dkt. No. 6, ROA 1736-37). Neither does the Court question the Bankruptcy Court's finding that it was induced to rely on these falsities in confirming the plan, which completes the elements necessary to demonstrate pre-confirmation fraud on the court. *See* (*id.*, ROA 1745-46); *Matter of Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 235 (5th Cir. 2020) (listing elements). Regardless, the Bankruptcy Court made the ultimate decision to return to the residuary trust its contemplated, undivided 20% interest in the Oilton ranch not under § 1144, but pursuant to its "inherent authority to interpret and enforce its confirmation orders." (Dkt. No. 6, ROA 1746-47). Appellant's second issue identifies no error.

**C.    Third Issue: Whether Bankruptcy Court Erred in Not Finding that Appellee Waived Her Claims**

Appellants next assert that Appellee waived her right to seek revocation of the plan because she accepted plan benefits in the form of royalty payments for mineral interests, as contemplated by the mediated settlement agreement, and that the Bankruptcy Court erred in failing to consider and apply this defense. (Dkt. No. 7 at ¶¶ 27-29). As Appellants observe, a generally accepted definition of waiver is the "voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." (*Id.* at ¶ 27); *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 313 (5th Cir. 2005) (emphasis omitted). Although Appellee concedes that she received royalty payments, she emphasizes that she did so as a beneficiary of division orders from two dissolving entities whose interests would have gone to the residuary trust of which she was a beneficiary, and essentially argues that no waiver lies in her receipt of that to which she was otherwise entitled. (Dkt. No. 20 at pp. 42-43). Appellants reply by differentiating between

Appellee's state-law interests as a limited partner of the residuary trust and her interests as a direct beneficiary under the plan, but any such difference is not dispositive. (Dkt. No. 24 at p. 17; *see also* Dkt. No. 7 at ¶ 29). That Appellee received certain benefits under the mediated settlement agreement and plan does not represent a voluntary relinquishment of her right to challenge Appellants' actions to deprive her of other benefits also contemplated therein. Also, the Bankruptcy Court did not revoke the plan, but returned these other benefits under its inherent authority to enforce its confirmation order. The Bankruptcy Court did not err in failing to find waiver.

**D.    Fourth Issue: Whether Bankruptcy Court Erred in Its Award of Attorney's Fees**

Appellants' next issue challenges both the authority given by the Bankruptcy Court for its award of attorney's fees[6] as well as the amount of the award. (Dkt. No. 7 at ¶¶ 30-37). Following the Bankruptcy Court's stated reliance on its inherent authority to enforce the confirmation order, it concluded that "[a]n appropriate sanction for failing to comply with a confirmed plan is the award of an affected party's attorney's fees," citing to a single case for support. (Dkt. No. 6, ROA 1746) (citing *In re Berry*, 582 B.R. 886, 892-93 (Bankr. D.S.C. 2018), *aff'd*, 2019 WL 1034484 (D.S.C. Mar. 5, 2019)). *Berry* involved an award of attorney's fees against a creditor who failed to apply payments in accordance with a confirmed plan and confirmation order, causing the debtor to incur fees in connection with the filing of a motion to enforce. *In re Berry*, 582 B.R. at 892. The debtor sought the fee award under the Bankruptcy Code's "power of court" provision, § 105, which states as follows:

> The court may issue any order…that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or

---

[6] Appellants appear to interpret this authority to include § 1114, but the Bankruptcy Court eschewed this provision as a basis for the relief afforded, and as explained *infra*, the single case on which the Court relied in awarding fees applied § 105, not § 1114. Therefore, Appellants' initial argument that "there is no provision within 11 U.S.C. § 1144 for an award of fees" misses the mark. (Dkt. No. 7 at ¶ 31; Dkt. No. 24 at p. 17).

11 / 17

>making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Observing that "[b]oth this Court and other courts have held that an award of attorney's fees under § 105 may be appropriate when a party violates the terms of a…plan and the court's confirmation order," and that "through § 105(a), Congress gave bankruptcy courts the statutory authority to hold parties in contempt for failing to comply with the Court's prior orders," *Berry* determined that the creditor's failure to properly apply plan payments justified a fee award. *In re Berry*, 582 B.R. at 893 (citing cases). Here, Appellants point to the Bankruptcy Court's disclaimer of its reliance on § 105—the Court observed that Appellee sought not revocation but modification of the plan, which under the Bankruptcy Code only a plan proponent or reorganized debtor may seek, and that "[t]o the extent Mrs. Hunt seeks relief under § 105, the Court may not alter an express right provided for under the Bankruptcy Code using its equitable power under § 105"—to argue that *Berry* provides no support for the fee award. (Dkt. No. 24 at pp. 9-10). But the Bankruptcy Court's non-reliance on § 105 to modify the confirmation order is not inconsistent with its reliance on the same to award fees in the absence of a similar impediment under the Code. Appellants submit that an impediment exists because "Section 105 does not in and of itself provide authority or jurisdiction to perform an act not otherwise provided for in the Bankruptcy Code," but the Fifth Circuit itself has interpreted § 105 to authorize bankruptcy courts to hold parties in civil contempt for failure to comply with court orders. (Dkt. No. 24 at p. 18; *see also* pp. 9-12; Dkt. No. 20 at p. 45); *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997); *see also In re Musslewhite*, 270 B.R. 72, 78 (S.D. Tex. 2000) (citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 962 (5th Cir. 1995)) (civil contempt order under § 105 "may serve to compensate for…attorneys' fees resulting from the contemptuous behavior"). As the Court has no basis to disturb the Bankruptcy Court's finding that Appellant Guero, the party responsible for implementing the confirmed plan, intentionally failed to do so, neither does it find that the Court

abused its discretion by requiring Guero to pay Appellee's attorney's fees incurred by reason of that failure. *See Matter of Terrebonne*, 108 F.3d at 613 (bankruptcy court's decision to impose sanctions reviewed for abuse of discretion).

The amount awarded, though, lacks sufficient support. Appellee requested $2,579,023.70 in fees and expenses, and after a hearing, the Bankruptcy Court reduced this amount to $2,293,009.35, without explaining the basis for the reduction. (Dkt. No. 7 at ¶ 30; Dkt. No. 6, ROA 1757, 2325-26, 2362). In its memorandum opinion, the Court required Guero to object to any forthcoming, itemized request for fees by "specifically identify[ing] the time entry or expense objected to and the basis of the objection," a task Guero subsequently characterized as impossible given Appellee's use of block-billing. (Dkt. No. 7 at ¶ 32; Dkt. No., 6, ROA 1747; *see* Dkt. No. 6, ROA 1748-2052, 2056-2067). Guero did, however, object to categories of entries, including time spent for multiple attorneys to attend trial, on matters in probate court, on Appellee's own dismissed appeals, and on matters relating to Memo and claims by and against Mrs. Benavides. (Dkt. No. 7 at ¶ 35; *see* Dkt. No. 6, ROA 2056-2067). On these bases, Guero took the position that Appellee incurred no more than $1.5 million in reasonable attorney's fees. (Dkt. No. 7 at ¶ 36; Dkt. No., 6, ROA 2060).

Appellee responds that "Appellants do not cite any specific billing entries alleged to be block billed," that the law does not dictate the precise manner in which an attorney must document time and that here "all billings [were] recorded daily, with detailed work for that day," that probate issues were inextricably intertwined with this case, and that "the volume of fee statements is a testament to the almost seven-year history of this [adversary]" and "in direct proportion to the task that was foisted on Mrs. Hunt to bring to light the fraud that was perpetrated on the Bankruptcy Court under the guise of a confirmed plan." (Dkt. No. 20 at pp. 45-47). None of these arguments, though, supports the amount awarded. Appellants challenge not the "volume of fee statements"—

they proposed a reduced but still significant ceiling of $1.5 million to the Bankruptcy Court—but whether the amount awarded corresponds to hours reasonably expended on Appellee's successful claims against Guero, the only party responsible for paying the fee award. As Appellants point out in reply, except for single-task entries, all of the time is block-billed, invariably complicating the burden placed on Guero to object to reasonableness of time spent on an entry-by-entry basis. (Dkt. No. 24 at p. 18). Aside from addressing the relationship between the adversary and probate proceedings, Appellee makes no effort to respond to Guero's remaining, categorical objections: to the reasonableness of time spent for multiple attorneys to attend trial and to the failure to segregate fees spent on failed appeals and on claims separate from those by or against Guero. As Appellants observe, the U.S. Supreme Court has directed lower courts to exclude from the initial fee calculation "hours that are excessive, redundant, or otherwise unnecessary," and to account for the relationship between the "extent of success" of the party requesting fees and the amount awarded. *See* (Dkt. No. 7 at ¶¶ 33, 34); *Hensley v. Eckerhart*, 461 U.S. 424, 434-440 (1983). The extent of Appellee's success—here, against Guero individually—is, in fact, "a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440. In the absence of any indication that the Bankruptcy Court made these considerations in arriving at the amount, the Court will reverse and remand for the purpose of allowing it to do so.

**E.     Fifth Issue: Whether Bankruptcy Court Erred in Refusing to Admit Evidence of Appellants' Settlement Offer**

According to Appellants, other considerations for the Bankruptcy Court in determining reasonableness of fees are whether the party against whom fees are sought "made an offer to settle the dispute, the recovery received, and the time spent after the offer was made." (Dkt. No. 7 at ¶ 38). Appellants claim to have made such an offer at the August 2019 mediation held after opening statements in the trial and complain of the Bankruptcy Court's denial of their motion to authorize disclosure of the offer through "limited recitation," or if necessary, the testimony of Debtor's

general bankruptcy counsel; instead, the Court directed Appellants to file an offer of proof under seal, which they did. *See* (*id.*; Dkt. No. 6, ROA 2128-2131, 2321-22, 2363). Appellants argue that neither Federal Rule of Evidence 408, governing compromise offers and negotiations, nor Texas Civil Practices and Remedies Code § 154.073(e), providing for in camera inspection of a confidential communication to determine whether it warrants a protective order or disclosure, prohibits admission of a settlement offer for the purpose of determining fees, and that "the amount offered should have been admitted and considered by the Bankruptcy Court in determining whether the fees incurred after the date of the offer were reasonable." (Dkt. No. 7 at ¶¶ 39-42).

Even assuming the non-existence of a bar to admission of the settlement offer, the Court agrees with Appellee that the Bankruptcy Court acted within its discretion in declining admission in this case. After opening statements, the Court encouraged the parties to mediate with the assurance, "[N]othing that you say I'm ever going to hear. I will not let anybody ask questions about the conversations that you have because you're doing it at my direction." (Dkt. No. 20 at p. 48; Dkt. No. 6, ROA 693-94). A subsequent order from the Court, which stated that the order was based on the agreement of the parties, appointed a mediator and specified that "[t]he rules applicable to mediations, including the Texas Rules, shall apply to the settlement conference." (Dkt. No. 20 at p. 48; Dkt. No. 10-73, ROA 19997). Among the Texas rules governing mediations is § 154.073, subsection (a) of which states that "a communication relating to the subject matter of any civil…dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding." (Dkt. No. 20 at p. 48); TEX. R. CIV. PRAC. & REM. CODE § 154.073(a). Subsection (e) on which Appellants rely offers an exception *if* the rule of confidentiality "conflicts with other legal requirements for disclosure of communications"; then, "the issue of confidentiality may be

presented to the court having jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure." TEX. CIV. PRAC. & REM. CODE § 154.073(e).  Appellants submit that Federal Rule of Evidence 408 supplies the conflict triggering the exception, but even if this rule does not prohibit disclosure, it is not a "legal requirement" for the same,[7] and the Bankruptcy Court had no obligation to depart from the general rule of confidentiality of which it had assured the parties (and to which the parties apparently agreed) before the mediation began.  *See* (Dkt. No. 7 at ¶ 42 n.7). The Court did not, then, commit error in declining to authorize disclosure of the offer.

### F. Sixth Issue: Whether Bankruptcy Court Erred in Granting Relief Not Requested or Pleaded

Appellants' sixth issue draws a contrast between the relief pleaded by Appellee under § 1114 and Rule 60, which by the time of trial had morphed into a request for modification of the plan not available under the Bankruptcy Code, and the Bankruptcy Court's ultimate use of its inherent authority to "remove certain releases" and "unwind" the transfer of interests in the Oilton ranch, to argue that the Court erred in granting relief not pleaded or requested.  (Dkt. No. 7 at ¶ 44).  But for the reasons explained *supra*, through its decision to void that portion of the confirmation order found to violate Appellee's due process rights—certain third-party "releases and exculpations"—the Court properly afforded relief under Rule 60(b)(4).  To the extent the Bankruptcy Court departed from Appellee's explicit requests for relief in fashioning the remaining

---

[7] Rule 408 provides that a settlement offer "is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," but that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FED. R. EVID. 408.  Even if, as Appellants argue, the list of what serves as "another purpose" is not exclusive and includes determining the reasonableness of fees awarded, the rule does not *require* consideration of a settlement offer for this purpose.  *See* (Dkt. No. 7 at ¶¶ 39-41).

remedies, it did so to correct fraud perpetrated on the Court itself and to interpret and enforce its own confirmation order, which by its express terms (and with Appellants' approval and consent) retained the Court's jurisdiction over the very issues encompassing the relief afforded to Appellee. (Dkt. No. 20 at p. 43; *see* Dkt. No. 1-4, ROA 9576, 9581-82, 9586, 9614-15). Appellants offer no authority disclaiming a court's ability to grant relief under these circumstances, and the Court finds no error.

## V.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that the Bankruptcy Court's Final Judgment and Order Denying Motion for Authority to Disclose Settlement Offer are **AFFIRMED**, and the Bankruptcy Court's Order Awarding Attorneys' Fees is **REVERSED** and **REMANDED** as to the amount awarded.

SO ORDERED November 14, 2024, at McAllen, Texas.

*/s/ Randy Crane*
Randy Crane
Chief United States District Judge